All right. Morning, Mr. Keough and Mr. Whittlesey. We call our third case for the morning, number 19-51173, Lucas Cranor, on behalf of Others v. 5 Star. Mr. Keough, you're up first with your 15 minutes. Thank you, Your Honor. May it please the Court, Keith Keough on behalf of Appellant Mr. Cranor. In this case, Mr. Cranor alleged he received three unwanted telemarketing texts. The last one, which is the subject of this case, was after he notified 5 Star he didn't want the texts and after he applied to stop. In his complaint, he alleged that he suffered a harm, that Congress enacted DCPA was meant to stop, which is this case is a nuisance and affects your privacy. And that's paragraph 29. He further alleged that these unwanted texts trespassed on his use of his phone, wasted his time, his battery. And as we argued in the trial court and we argued to this court, those allegations are sufficient for Article 3 injury. In fact, the first two texts, you know, settled and got paid and signed a release. Yes, Your Honor. OK, so you can't really count those in this part of this lawsuit, can you? You can. Well, first, we should be counting any text. That's a quantitative test. But as far as context, it goes to injury. There's a distinction between a defense or release and whether there's an injury. So and that's what we cited in our briefs that you can't conflate the two. Just like, for example, if I sign up to fight Mike Tyson since he has a comeback. Right. I sign a release. I go in there. He breaks my jaw. I file a case. They have a defense, but I still have an injury. So there's a huge distinction between those two things. I'm trying to use those as part of his current lawsuit. Those are the injuries that he released as part of his current lawsuit. No, they were alleged to show willfulness, Your Honor, and that they knew they didn't have consent and they they knew Mr. Cranor didn't want them. That's why they were alleged, because we've been very clear. You shouldn't have to count text. So any type of whether there's one or 20. Our position is it doesn't matter. So we think there's three texts at issue. He has a claim for one of them, but we don't think that counting is an issue. And that's what every district court in the Fifth Circuit held prior to this opinion. That's what six circuits, five at a time, this opinion was rendered held that the harm Congress meant to prevent is for a call. And, you know, they looked at, you know, for example, MIMS versus Aero Financial. The Supreme Court held that the TCPA was enacted to prevent the invasion of privacy. And that was a case for a call to a cell phone. Now, the six circuits, when they analyze this issue, looked at cases that had very few calls or texts. And, you know, the trial court agreed with Mr. Cranor that a text is synonymous with a call. There's no distinction between the two. As far as the TCPA concerned, there is no voice call claim versus text claim. They're both calls. So the second circuit. A voice call is more intrusive. No, Your Honor, because the voice call I get, I don't have to listen to the text is on my screen. So if they're calling me up to tell a market, I could end that call. I don't have to listen to their sales pitch. The text is automatically on my screen. They got the advertisement across and I saw it. So I don't think they're more intrusive, but that's a degree, not an issue of kind. So that seems to be like a quantitative test, but the TCPA doesn't distinguish between the two. So I don't understand why we would argue that one would be worse than the other. And if they are, it doesn't mean it's no harm for a text. So the second circuit, Milito, found that one text was sufficient because that was the very harm that Congress sought to prevent. The third circuit in Socino was one phone call. The fourth circuit in Krakauer versus Dish was two calls, but that was a do not call claim where they're required to have two calls in order to stay at gain. So there will never be a do not call claim with one call. The seventh circuit, which is the most recent opinion, found that a handful of texts were sufficient, but then explicitly found that the number of texts were irrelevant. The eighth circuit in Golan, two texts. The ninth circuit in Van Patten, sorry, Golan was two calls, but that was also a do not call claim. Van Patten, two texts. Now, the Supreme Court has also dealt with the TCPA surprisingly a lot. One of those cases was Campbell Ewald. That was a one text claim. Now, the Supreme Court did not look at Article III injury in effect. Instead, the majority dealt with Article III mootness issues of standing. But Justice Roberts, in his dissent, went through a standing analysis before he went and then gave the reasons on why he dissented. And he noted that all agree that Mr. Gomez had a claim for the one text. And there was no other portions of the opinion, whether the majority or concurrence, that took issue with that claim. Yet the trial court disregarded these, at the time, five circuit opinions. Now there's six. And disregarded all the district court opinions and followed the 11th circuit opinion in Salt Cedar, which is the only circuit to hold that receipt of one text is not sufficient. Now, to be clear, we are not arguing this court should rule Mr. Cranor's favor because there's a 6-1 circuit split in his favor. Instead, we're arguing this court should find his favor because the analysis undertaken by those six courts coincides with this court's precedent. For example, OCA Greater Houston, the 5th Circuit talks about, you look at the close relationship to the harm Congress sought to prevent. It's a quality test, not a quantitative test. For Salt Cedar, the way it was applied is a quantitative test. So all six circuits held that the harm that a call makes is a harm that Congress sought to prevent, and that is sufficient concreteness underspoken, which also held an identifiable trifle is sufficient. Counsel, isn't the real question not whether Congress sought to prevent it? I mean, it seems like plain text of the statute says they did. Isn't the real question whether Article III allows Congress to protect it? Yes, Your Honor, and as Spokio tells us, that Congress can allege certain harms to a de facto injury in fact, but they don't have carte blanche. And one of those things you look at is whether it's closely related. Closely related to what? Sorry, closely related to a tort at common law. And all these circuits looked at that these unwanted telemarketing calls or unwanted calls are closely related to the intrusion upon seclusion. And the 11th Circuit did that, but they went a step farther and found that in that case, Mr. Solito didn't satisfy the requirements of that tort. And probably put it better. The most recent case on this was the 7th Circuit in Gattalett versus AT&T, and they're the only one of the six that was decided after Solito. And in that case, and forgive me for quoting it, but it'll do a better job than I will. Judge Barrett held for the 7th Circuit. The 11th Circuit treated the injury in its case as abstract, partly because common law courts generally require a much more substantial imposition, typically many calls, to support liability for intrusion upon seclusion. But when Spokio instructs us to analogize the harms recognized by common law, we are meant to look for a close relationship in kind, not degree. And it goes on to state that, in other words, while common law offers guidance, it does not stake out the limits of Congress's power. So I've read Judge Barrett's opinion in that case, obviously, very closely. And it's interesting to me because it strikes me that one of the elements, common law elements of intrusion upon seclusion, is the repeated or significant degree of the intrusion upon the seclusion. So that simply a little bit of intrusion is not sufficient. And that's not necessarily a difference in kind. That's just a failure to satisfy that element of the tort. Does that make sense? It does, Your Honor, but I think that's where Solito got hung up on, as they're saying that you need to satisfy not the harm of the common law, but the elements. And the other six circuits all held that's not the case. It's the actual harm. And, in fact, Five Star actually agrees with us. In their brief, they state you don't need to satisfy the elements of the common law tort. It just needs a very close relationship. Where we think that Five Star is wrong, they then point to Solito's analysis, which requires the elements be met, to hold there's no close relationship. I think that's a bit circular and inconsistent with both Spokio and this Court's prior precedent and the OCA Houston-Texas case, which talks about close relationship. It specifically does not find the elements need to be met. And that's why the Fifth Circuit's precedent lines up perfectly with these other six circuits, which all held that you don't need to show more. You don't need to prove the underlying tort. And it's worth noting that one of the basis that Solito articulates for its finding is that Congress was not concerned with invasion of privacy to cell phones. That Congress wasn't concerned with an invasion of privacy to residential lines. And we submit that's not supported in the TCPA or case law. The TCPA covers explicitly the cause of cell phones. It covers do not call clients to residentials. It covers faxes. It covers pager services. It covers business calls. So the position or basis to say that it's only limited to residential lines and therefore Solito can sidestep the judgment of Congress, I think it's misplaced. And in fact, the MIMS case I discussed in the beginning where Congress, sorry, where the Supreme Court found that the TCPA was enacted to prevent these types of intrusions to privacy was a case to a cell phone. It was not a residential line case. So we think that Solito was simply misapplied that basis. Now, you know, and going through when you look at the analysis of Solito, they, the court explicitly states that it's a qualitative test, not a quantitative, but then discusses degrees, how many calls, how much. And then the concurrence notes that if there was more than one case, one text, that it might be a different result. That's a quantitative test, no matter what you call it. And the same thing with Five Star. They note that there may be standing if you had two calls or texts with the second one being after a stop request. That's a quantitative analysis. That's counting texts. And that gets me into the first question Judge Davis asked me, where do you have, you know, three texts or one? Well, as far as the context of Article 3 standing, we have three. We said there was two texts. Mr. Cranor said stop. He called them. They resolved their dispute. And he did it again. So to the extent that one text weighs more than no, Five Star knew Mr. Cranor didn't want this telemarketing text. They had a dispute about it. He said stop. And he said it to them anyway. So even if more than one was required, if Five Star is right, Mr. Cranor satisfies that test. So plaintiff properly alleged sufficient injury in fact to satisfy Article 3. As an independent basis, Mr. Cranor argued that Five Star violated his substantive right. And Five Star really didn't address this. But we set forth in our brief that the TCPA sets forth a substantive right. And a violation of that by itself is an independent reason for Article 3 injury in fact. And that follows this court's decision in Planned Parenthood, which recognizes a violation of a substantive right as an independent basis to file Article 3 injury. It also follows the Supreme Court in Hayman's Realty that found the same. Obviously different statutes, but the law is the same. So for that independent reason, Mr. Cranor states injury in fact. So for the reasons stated in the briefs and articulated today, we would ask that the trial court's opinion dismissing the case is reversed and remanded. And I'll reserve the remaining time for a rebuttal. All right. Thank you, sir. We'll hear from Mr. Whittlesey. Good morning. May it please the court. My name is David Whittlesey, and I represent the Appalachian Five Star Nutrition. This court should affirm the district court's dismissal of the plaintiff's claims for two separate reasons. One has been discussed for the last 15 minutes. The single text message that appellant received does not rise to the level of a concrete injury that supports Article 3 standing. That was the basis for our motion to dismiss under 12B1. And that was the basis for the court's order of dismissal and a final judgment below. Second, the court can and should affirm the district court's judgment based on our 12B6 motion to dismiss argument that the text message was not sent using an auto dialer or an ATDS, which is required in order to assert a claim under the TCPA. We urge this ATDS argument in our motion to dismiss under Rule 12B6, but the court never reached that specific question. Once Judge Yackel found lack of standing under 12B1, he elected not to go any further. This court, however, can and should affirm the judgment on that basis in addition to the lack of standing, or if it wanted to, an alternative to the lack of standing. It's curious. Let me ask you this. I mean, it's just curious. You know, your client did these texts, and, you know, for whatever reason, the other text resulted in a settlement, which ostensibly makes one think there was some reason to believe that those text messages invaded some space they shouldn't have and so forth. And so they were settled. And so then your client, for reasons best known to it, texts the man again. So then he sues. And so then it's, well, you haven't shown an injury. Ergo, he must have been injured or something with the other ones that were settled. So how does he become anesthetized with the one text when the same defendant chose to settle it before? I mean, you know, just as a layperson, that just seems a little disingenuous to me. You hurt me with a bunch of texts. You settled. You sent me another one. But now you're going to say, well, I don't have any injury. But you're forgetting about that you settled with me because you thought I did. I was injured. I mean, that just seems, as a layperson, not as an Article III judge, I mean, that just seems disingenuous to me to stand on principle when it was all about the money. I mean, I'm just telling you it does. I mean, it's here as a legal case, but it's just a little hard. You know, looking at the one who argues he has no injury, you know, he needs a whole bunch of them. Well, in this case, there were a bunch of them. They were settled. And so he has this one. He says, enough. Settlement didn't do it, so I'm going to sue you. And so he sues you, and he says one claim. And counsel says once enough. So, you know, I mean, does none of that matter as far as injury? I mean, he hasn't won his case on the merits, but to say he doesn't have standing? Your Honor, the standing argument is one of our two arguments. And I would just say, I mean, I wasn't involved with the settlement, and I don't know that you can take the fact that someone settles a case. A lot of these cases are, frankly, shakedown cases. And I don't know that you can say that someone settles a case for it. I shouldn't say on the record what the number was, but you can see because it's under seal and it says it's confidential. But somebody settles a case to avoid being sued. In no respect does that say that they believe that the other side has an injury. I mean, I get it. I mean, I get it. And there's nothing in the opinion we write that's going to say anything about the settlement. I got you. And if we decided this case on the briefs, this wouldn't come up. But since we got you in an oral argument, I just have to say as a layperson when I'm reading this, and it was a bunch of text, and it was settled. And then despite that, you know, the one who settled sends another text. And the person says, enough. I'm going to court. And then the person says, well, you can't do that because you don't have injuries. So, I mean, I'm just exercising Article III free thinking. You don't have to respond to it. Okay, Your Honor. Well, we appreciate your comments on that. Of course, the first two text messages that were sent, there wasn't a bunch. There were two. They were settled. And our position is that those shouldn't be considered. So, what we have is a single text message that was sent. And we have a court, the Salcedo Court in the 11th Circuit, who has addressed what I suggest is this exact same fact scenario and has walked through a detailed analysis and a very good analysis. And we urge this court to adopt their analysis. We think it's right on point. If you look at and compare to some of the other courts, for example, the Van Patten Court, it conducted a one-sentence analysis of the close relationship test, whereas the 11th Circuit was two pages. So, it was very much different. But I wanted to get back to what I started to talk about is there are really two reasons. Standing is one. The other is ATDS, which is frankly much easier. It's not even a close call at all. Can I ask one question on that just before we get to it? I want to hear the robocaller question or point. But just as a matter of appellate procedure, can we convert a 12B1 dismissal into a 12B6 dismissal without a cross-appeal? Yes, Your Honor. We looked at that in detail. And there are several cases I can cite here for the court. And what we found is that it is well established that this court can affirm a lower court's ruling on a motion to dismiss on any basis that is supported by the record. That I know, but the question is there's a difference between a jurisdictional dismissal and a merits one, right? Right. Well, even if the court never reached it below, this court, as long as it's fully briefed and in the record, as a matter of procedure, the cases that we found say that this court can affirm the judgment on any basis, even if the court below didn't get it. And so, for example, the Montoya v. FedEx Brown package system case, which is 614 Fed Third 145, the circuit 2010, the torch liquidating. I think I must be asked. I'm sure I'm asking the question wrong. So let me try to do it a little bit differently. It's obviously true that a 12 B6 decision can be affirmed on any basis, even one that the district court didn't reach because the relief that you receive in the district court and that you're asking for in the court of appeals is the same. That is dismissal of the complaint on the merits under Rule 12 B6. I'm asking a slightly different question, which is if you get 12 B1 relief in the district court, which is obviously jurisdictional, not on the merits. It has no preclusive effect for race, judicata or collateral estoppel or any of these other court reasons. Can you then come to the court of appeals and say we want the broader relief of 12 B6 merits adjudication without a cross appeal? Because, as you know, the American Railway rule would be no, you can't get broader relief in the court of appeals. Then you got in the district court without cross appeal. Obviously, you could have cross appealed, but you didn't. Your Honor, I believe that the torch liquidating trust case dealt with that issue. It's 561, 377 where the district court dismissed fiduciary duties claims for lack of standing. But on appeal, the Fifth Circuit found that the plaintiffs had standing, but affirmed for dismissal for failure to state the claim. OK, can we can we start, though, with the I'm curious about the principal issue that was briefed to us, which is this article three question and the 12 B1 question, obviously the one that Judge Yagle decided. There's a lot in your brief that is about how the one text doesn't impose any tangible injuries. It doesn't that it's not imposing costs the same way that the fax cases, for example, that you distinguish. Is it your position or your client's position that in order to be a cognizable Article three case or controversy, there must be an attendant cost to the plaintiff? I think if you look at the the close relationship analysis and look at the Supreme Court's analysis, there must be some sort of something more. I don't know that I would say it has to be a cost, but it has to be something more than like what the Salcedo court described as walking down a busy sidewalk and having a flyer waved in your face. That's not the type of injury that's that would allow the litigant to open the door to the federal court. Now, whether it's the cost or you could have invasion of privacy, there are different types of courts that could that could apply, for example, invasion of privacy. Does that does that involve a cost? I don't know. That's then you get to the degree of repeated and offensive conduct. And you're talking about the tort of invasion of privacy, which is intangible. So the court looked at it, you know, tangible harm and intangible harm, tangible harm would be as you're talking about. I get a fax and it uses up my toner. If I get a phone call and I have to pay for the airtime, this would be the tangible harm. Then there would be a cost that doesn't exist here. Can't show tangible harm. I'm trying to figure out the way I understand it. You tell me which part of this breaks down. Article three vests federal jurisdiction over cases or controversies of which there is a set universe, presumably that existed in 1789. And then Congress can pick from that set universe to create causes of action like they did arguably here. And my question is, is the set universe of cases or controversies that existed in 1789? Does the plaintiff have to be able to show some tangible injury, some quantifiable in terms of dollars or what have you? I think the plaintiff has to be able to show an injury. The courts talk about tangible and intangible injuries being created, meaning, like, for example, invasion of privacy. It is an injury, but there's no cost associated with it. Am I understanding your question? Exactly. So that would have been actionable in 1789 without any proof of damage. The plaintiff trespass. Right. If my neighbor, without invitation and without my permission and direct contravention of a big sign that says no trespassing, takes a step onto my lawn, that's actionable at common law, regardless of whether there's damage done to my grass or my sprinkler system or whatever. Right. Right. If someone were to assault me in the street, yell some profanity or some fighting words, those would be actionable, even if they cause me no damage at all. Right. Well, if you look at the tort, the assault tort. I'm curious. So I was looking for something that I realize is not in the brief. So I will read it to you. And I'm just curious to your reaction for I was looking for something completely unrelated over the weekend. And I came across this case from Joseph Story when he was writing circuit in 1838. And I'm curious as to your reaction as to what he says. I am not able to understand how it can correctly be said in a legal sense that an action will not lie, even in a case of a wrong or a violation of a right, unless it is followed by some perceptible damage. While can be established as a matter of fact, on the contrary, from my earliest reading, there's Joseph Story. I have considered it laid upon the very elements of the common law that whenever there is a wrong, there is a remedy to address it and that every injury imports damage in the nature of it. And this is my my key question. I'm curious as to your reaction to it. Actual perceptible damage is not indispensable as the foundation of an action. The law tolerates no farther inquiry than whether there has been a violation of a right. If so, the party injured is entitled to maintain his action, which makes it sound like at least in 1838 when he's writing circuit in Maine. That the rule that was clearly established in his mind anyway was that you don't really need an identifiable damage, a perceptible, quantifiable thing. And if that's true, then I don't see why Congress couldn't just say, OK, well, here's an imperceptible damage. We're going to make it actionable. Here's our statute. I think for the Spokane case deals directly with that issue as far as there there's a statute. And if you can't just have a naked violation of the statute absent Article three standing. And so that's why the court walks through saying these intangible type injuries. There are you have to go through their analysis and they have the two part analysis that they go through of whether or not it's rises to the level of Article three standing. And it is a concrete injury if it's intangible. And the Salcedo court went through and did that. And that's what the Supreme Court is instructed under Spokane. Is your view that if if there were multiple I take it from your treatment of Salcedo in your brief that multiple harassing repeated and harassing, I think, is the phrase that you pull from Salcedo. That that would be actionable at common law because it looks more like the tort of intrusion upon seclusion. I think the more you look at the qualitative nature, the nature, it's not I'm not saying that there's a number of text that two text is three text is. But you look at the qualitative nature of it. And I think that, you know, looking at this case, it's not it's very similar to Salcedo. If there are repeated and harassing text messages, then that looks like more a lot more like they're standing. And in fact, a number of cases have held that they're standing, including one at least one district court case from this circuit has held that repeated harassing text messages. So, yes, there's a line somewhere, but it's not a yardstick. It's a qualitative measurement. And I think that's what we did. Well, if you had to write the line, suppose suppose you were on on the court and you were trying to articulate the distinction between repeated and harassing, which is obviously actionable and clearly a case or controversy and Congress can can create a federal cause of action to enforce it and something that's not repeated and harassing. What would be the line you would prefer? I would have to look at it on a qualitative basis. I think you have to look at each case is unique on the facts. Now, look, you know, for example, this case, once you set aside the prior text messages that were settled, you received one text message and he received no more after that. And so in that case, it doesn't get it doesn't get in there. In another case, if somebody had received five text messages and it had said stop, then maybe that would get them there. There's plenty of courts that have analyzed this, and I think that the other lawyer talked about the Melito case where he said there were one text. That's actually we pulled the complaint from that case. There were actually numerous texts in that case based on the complaint that the appellate court doesn't say. The case had five text messages and the Van Patten case had two text messages. So there's never been a court, a circuit court that felt that a single text message is enough. So this court were to hold that, then it would be the first one. The only court to address the single text message is the 11th Circuit. And they said it wasn't enough. Where exactly is the line? I don't know that you could draw a line based on the number of text messages. You have to look at the qualitative. Well, talk about the Gaddlehawk case is actually quite interesting case because it's the opposing lawyer talked about it during his argument. And he cited that case 12 times in his brief. And Judge Oldham, I know you've even read it closely. And Judge Barrett walks through and gives an excellent analysis in that case of ATDS, which bring us back to that ATDS issue. In this case, there's not even there's no dispute that there is a there's not a random or sequential number generator. There's the appellant walked into our point of store and gave the number, gave his phone number. It wasn't the result of a random or sequential number generator, which is required in order to be an ATDS, which is required to even file a lawsuit under the TCPA. And so the cases that have looked at that, there's a circuit split on this issue. And I actually would submit to the court that this issue, the ATDS issue is actually much more important than the standing issue to litigants generally, because it comes up in every one of these cases. Every time someone files one of these cases, this they have to look at, is there an auto dialer or not? And the courts in the Fifth Circuit at the trial court level are having to grapple with this daily with sort of the barrage of these TCPA cases that we're seeing. And if this court could address that, I think it would go a long way to clarifying the law in the Fifth Circuit. And it would serve judicial economy, really, so the court could address that in its opinion in this case, rather than remanding back to Judge Aple to address this issue when it's a legal question. There's no fact allegation that there is an auto dialer that is used. So there's nothing that can be changed, and having him grant another motion to dismiss, then have the appeal to come back. It's fully briefed below, and I think that issue can be decided by this court, even though it wasn't specifically raised or discussed in the briefs, and we didn't have to do a rough appeal on it according to the cases. We'd still have to do the jurisdictional question, right? Obviously, you know, this is sort of… Yes, yes. We'd have to determine the jurisdiction. Just as Judge Barrett, that's correct. Just as Judge Barrett did in the Gatalog case, the parties didn't raise jurisdiction. That's interesting. The parties didn't raise jurisdiction in that case. She raised it on her own, and determined that there was not…that they had standing, and then went on to fully analyze the ATDS issue, which we think is a very good opinion from that point. And if there are any other questions the court wanted me to address, I'm running short on time. I have other courts in my outline that the court would like to support. I'd be happy to address them. Seems there are none. Thank you, Mr. Wittlesee. Thank you. Appreciate your briefing and your argument. We'll shift back to Mr. Keogh for rebuttal. Thank you. First, taking the 12B6 ATDS argument, you know, FISA didn't even raise that in the response brief, and it's, you know, somewhat of an ambush or argument to raise it here. The courts that…the cases that I'm familiar with, you know, deal with, the court can, you know, affirm on any ground when it deals with merits. I haven't researched the issue the court asked about the 12B1 versus 12B6, but we would suggest that the proper remedy here is the court to analyze the jurisdiction. And obviously, if it comes down on our way, remand for further proceedings. It's a pleading issue. You know, counsel points to GADILAC and how they dealt with both jurisdiction and the merits, but that was on summary judgment. There was expert opinion on how this system worked, and based upon this expert opinion, the court made its ruling. So, I don't think you could point to GADILAC as a model to follow as far as procedurally. Further, this issue is actually before the Supreme Court for oral argument on December 8th in the Drupal versus Facebook case. So, we would suggest that if this case is reversed, that it's set down, it's going to be dispositive and the district court can wait on that decision. But since this court has to deal with jurisdiction anyway, it should wait and let the trial court be the court of first instance, which is the normal course. And I want to correct one thing that counsel said. He said they pulled a complaint in Aledo and there was a lot of text messages. Aledo is a consolidation of several cases. It's one of my cases. So, there were different plaintiffs with different number of texts, but the court explicitly dealt with the one plaintiff who had a single text. So, there was other plaintiffs that had more texts, but they explicitly dealt with one and held one was sufficient. So, I want to clarify that issue. Now, another thing is, counsel mentioned this is different than the fax cases. And it may be, but the Sixth Circuit cases that we cited and that I went through are all, they're not fax cases, they're all telephone cases. And they all found that the receipt of the call, which is the text, is the exact harm that Congress has to prevent. And the panel asked, is some type of cost or economic injury required? Spokio explicitly rejects that idea. They said the harm must be closely related, that there has to be, it can be a non-economic harm. Identifiable trifle is enough. And as Your Honor noted, you know, the trespass. Forget avoid the grass, if I step on your concrete driveway, I have trespassed and you have a claim against me for that. And there's no way I harmed your concrete driveway. So, there's no cost or economic analysis done. And, you know, when the panel asked Five Star, where do you draw the line? In their briefs, they said two might be enough if one was sent after a stop request. Now, they're suggesting five. And this question or answers illustrates the danger of a quantitative test. You can't count one versus two versus five. That's quantitative. And what the big reason is, it's going to differ between each judge. You're going to have one judge is going to think, well, one's good enough. I'm counting. Another one might think five is good enough. And you have no uniformity in the federal courts. You know, forget nationwide. You know, even in this district or the circuit, you won't have uniformity because the courts are going to differ. Because I would imagine each person on the panel might think there's a different number on this line. And that's why it's impermissible to have a quantitative test. And that's what this court held in the OCA Houston, Texas case. That you have to have a quality test, not quantitative. And finally, you know, the judge story recitation. I think that's very illustrative because the case of controversy requirement, you know, there's no injury in fact in the Constitution. It's just a case of controversy. Didn't the Lehigh case fix that? Well, yes, it was created by the case. So I'm not saying we don't have that same injury in fact. Clearly, the Supreme Court has held we do. But my point was how we got there, you know, and looking at common law, where common law has plenty of torts that do not require any type of injury in fact, or economic damages is probably a better way of saying it. And when Congress, you know, created the TCPA, they saw a harm, which is closely related to intrusion upon seclusion. It's also closely related to trespass. This text trespass on Mr. Kramer's phone. It showed the message. So nothing more, it actually fixed that element of trespass. So the court doesn't need to only focus on intrusion upon seclusion. We allege in paragraph 30 of the complaint that that's a trespass on his phone. I see my time is up. So if the court doesn't have any further questions. All right. Thank you, Mr. Keough. Thank you, Mr. Wilsey, for your briefing and your argument, and especially responding to the court's questions. We will take your case as submitted and we'll get it decided as soon as we can. Thank you, Courtney. In case, all right, you may be excused. Thanks to the court.